```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
JOSE PEREZ                     :
                Plaintiff,     :
                               :
         -against-             :     OPINION & ORDER
                               :     No. 08 Civ. 6558 (JFK)
                               :     No. 05 Cr. 441 (JFK)
UNITED STATES OF AMERICA       :
                               :
                Defendant.     :
-------------------------------x
```
**JOHN F. KEENAN, United States District Judge:**

Petitioner Jose Perez ("Petitioner" or "Perez") pleaded guilty to conspiracy to distribute and possess with intent to distribute 3,4-methlyenedioxymethamphetamine (commonly known as "ecstasy"). He currently is serving a 63-month prison term imposed by this Court on December 14, 2006. He moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 on the grounds that his attorneys failed to properly explain the terms of the plea agreement and failed to raise on direct appeal meritorious arguments concerning the propriety of Petitioner's sentence. For the reasons that follow, the motion is denied.

## I. BACKGROUND

### A. Arrest

Perez testified to the following facts at his <u>Fatico</u> hearing on October 11, 2006:

At about 12:00 p.m. on April 12, 2005, Petitioner's brother-in-law, Efrain Rivera ("Rivera"), placed a bag

containing 5,000 pills — 2,000 of which were ecstasy, 3,000 of which were fake — in Perez's car, which was parked outside Perez's residence in Bronx, New York. Rivera subsequently called Perez to notify him of the bag that he placed in his car and to offer him $200 to transport the pills to 174th Street and Fort Washington Avenue in Manhattan, New York, where Rivera had arranged to sell the pills to a third party. At the plea proceeding on December 1, 2005, Perez acknowledged that the package contained an illegal substance. Unbeknownst to Rivera or Perez, the third party seeking to buy the pills was in fact a confidential source ("the CS") acting under the supervision of the Drug Enforcement Agency ("DEA").

Perez agreed to transport the pills for Rivera. At around 4:00 p.m., Perez drove to 174th Street and Fort Washington Avenue, and, upon arriving, Rivera transferred the bag of pills from Perez's car to his own vehicle. Perez then returned to the Bronx.

After Perez reached the Bronx, Rivera called him again, requesting that he meet with a man named Giovanni to deliver cocaine to the same location in Manhattan. Perez maintains that he refused to transport the cocaine, but agreed to meet with Giovanni at a restaurant in the Bronx. Perez was at the restaurant for about 45 minutes and then returned to the vicinity of his home. Perez, Giovanni, and a third man who

Perez did not know, met near Perez's home. Perez then drove back to 174th Street and Fort Washington Avenue to collect from Rivera the $200 he was owed for delivering the ecstasy pills. Giovanni and the third man followed Perez in their respective vehicles to meet with Rivera.

Upon Perez's arrival in Manhattan, Rivera retrieved the bag of pills and gave them to the CS. Rivera told the CS that the cocaine had not been delivered. The CS examined the contents of the bag and called the DEA task force officer. Shortly thereafter, the DEA task force officer arrested Perez and Rivera.

### B. Indictment and Guilty Plea

On April 22, 2005, a grand jury returned a one-count indictment charging Perez with conspiracy to distribute and possess with intent to distribute, in violation of 21 U.S.C. § 846: (1) 500 grams or more of mixtures and substances containing a detectable amount of cocaine; and (2) mixtures and substances containing a detectable amount of ecstasy.

On November 2, 2005, Perez entered into a written plea agreement in which Perez agreed to plead guilty with regard to the 2,000 pills that were in fact ecstasy. In the plea agreement, the parties calculated Perez's base offense level to be 26, but agreed that Perez would be entitled to a three-level downward adjustment pursuant to United States Sentencing

Guidelines ("U.S.S.G.") § 3E1.1 "assuming the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the Government." (Gov't Ex. C, at 2.)  This would produce an adjusted offense level of 23, which, combined with his Criminal History Category of I, yields a recommended term of imprisonment of 46 to 57 months under the sentencing guidelines.  The agreement further provides that the Government could "seek denial of the adjustment for acceptance of responsibility . . . and/or imposition of an adjustment for obstruction of justice . . . should it be determined that the defendant has . . . committed another crime after signing this agreement." (Id. at 3.)

On December 1, 2005, Perez appeared before the Court and, through the assistance of an interpretor, pleaded guilty to conspiring to distribute and possess with intent to distribute ecstasy.  At the outset of the Rule 11 hearing, counsel affirmed that he had explained the plea agreement to Perez and that it had been translated for him.  The Court placed Perez under oath and admonished him, among other things, that: (1) it was important to tell the truth because any false statements could lead to future prosecution or otherwise "get [him] in more trouble" (Plea Tr., Gov't Ex. B, at 4.); (2) he had a right to a trial in which he would be presumed innocent until proven guilty; (3) the charge to which he was pleading guilty carried

a statutory maximum sentence of twenty years; and (4) the Government calculated his applicable guideline sentencing range to be 46 to 57 months, but that the sentencing guidelines are not binding on the Court. Perez told the Court that he understood his rights and was willing to waive them by pleading guilty. Perez further stated that he was satisfied with the representation he received by counsel and that he was pleading guilty on his own free will, without any threat of force or promise of leniency, because, in fact, he was guilty.

Perez then explained the circumstances of his crime, and the Court accepted the guilty plea.

### C. The Fatico Hearing

On February 10, 2006, the Probation Office prepared a pre-sentence report, in which it recommended a sentence that comported with the terms of the plea agreement.

On August 9, 2006, defense counsel wrote the Court, requesting a Fatico hearing to determine his eligibility for safety valve credit, pursuant to U.S.S.G. § 5C1.2, under which Perez would receive an additional two-level reduction of his offense level. The Government stipulated that Perez had satisfied the first four criteria for qualification of the saftey valve, but disputed the fifth criteria, i.e., that "not later than the time of the sentencing hearing the defendant has truthfully provided to the Government all information and

evidence the defendant has concerning the offense." 18 U.S.C. § 3553(f)(5).

The Fatico hearing was held on October 11, 2006. Perez's testimony at the hearing contradicted his previous statements to the DEA task force officers following his arrest and to the Government in the safety valve proffer session. For example, Perez testified that he lived near Monroe Avenue in the Bronx. However, on cross-examination, he admitted that he previously had told the DEA agents that he resided on 174th Street in Manhattan, near the location of the narcotics transaction. Perez also testified on direct and cross-examination that although he had refused to deliver the cocaine to Rivera, he met with Giovanni and a third man "out of curiosity" and led them in their respective vehicles to Manhattan to meet with Rivera. However, on cross-examination, Perez admitted that he had never mentioned Giovanni or the third man during the safety valve proffer session.

Moreover, Perez's testimony on cross-examination contradicted the assertions he made on direct examination. On direct examination, he testified that Rivera told him to look inside the bag that Rivera had put in his car. However, on cross-examination, Perez testified that Rivera did not tell him to check the contents of the bag. Perez's testimony also was inconsistent with regard to when he first met the third man. On

direct examination, Perez testified that the third man arrived at the restaurant while Perez was there with Giovanni. However, on cross-examination, Perez stated that, when he left the restaurant, the third man had not yet arrived.

On October 13, 2006, at the continuation of the Fatico hearing, sentencing counsel informed the Court that Perez wished to withdraw his application and asked to terminate the proceeding. The Government consented, but noted that it would pursue the "consequences" for what it considered to be perjurious testimony by Perez.

### D. Sentencing and Appeal

In its sentencing memorandum, the Government asserted that, based on his perjurious testimony at the Fatico hearing, Perez should lose the three-level downward adjustment for acceptance of responsibility and should be assessed a two-level enhancement for obstruction of justice. Defense counsel maintained that Perez should still receive the three-level downward adjustment for acceptance of responsibility because he truthfully admitted to the relevant conduct in the narcotics transaction. Counsel claimed that Perez was confused about the whole process, and therefore did not have the specific intent to commit perjury or obstruct justice. He stated that Perez believed, despite repeated warnings from sentencing counsel, the Government, and

the Court, that there were no possible adverse consequences from the Fatico hearing beyond the denial of safety valve credit.

The Government contested Perez's claim of confusion. It asserted that Perez's testimony was purposely perjurious in order to convince the Court that he played a much more minor role in the offense than the evidence overwhelmingly showed.

The Court agreed with the Government, determining that Perez was not confused at either the Fatico hearing or the proffer session. The Court specifically found that Perez did "not testify truthfully" regarding: (1) whether Rivera had asked him to look at the contents of the bag that he placed in Perez's car; and (2) whether the "mysterious third man" was present at his meeting with Giovanni. (Sent. Tr., Gov't Ex. E, at 8-10.) The Court also believed that Perez was "not credible and his testiony is not worthy of belief," pointing out that it made no sense that Perez purportedly wanted no part in the cocaine transaction, but still went to meet with Giovanni. (Id. at 9-10.) The Court therefore determined the offense level to be 28, which included a two-level enhancement for obstruction of justice and did not include the three-level reduction for acceptance of responsibility. Paired with Perez's criminal history level of I, the sentencing guidelines provides for a sentencing range of 78 to 97 months of imprisonment.

Before the Court announced Perez's sentence, it provided him an opportunity to address the Court. He apologized for his crime and expressed remorse for his "mistake" of providing false testimony, telling the Court that he lied "out of stupidity and ignorance." (Id. at 20.) The Court departed from the guideline range of 78 to 97 months, finding that it would have been inequitable to sentence Perez to a higher period of incarceration than his co-defendant, Rivera. It imposed a 63-month term of imprisonment — the same amount of time Rivera received — to be followed by three years of supervised release.

Perez filed a timely notice of appeal and was appointed new counsel. Appellate counsel submitted a brief pursuant to Anders v. California, 386 U.S. 738 (1967), asking to be relieved as counsel because, based on his review of the record, there were no non-frivilous issues to be raised on appeal. The Anders brief thoroughly detailed the circumstances surrounding Perez's arrest, plea, and sentence. Morover, appellate counsel set forth his reasons for concluding that there were no non-frivoulous issues on appeal, namely: (1) Petitioner's guilty plea was knowing and voluntary; (2) the Court had a valid basis for withholding the acceptance of responsibility reduction and mandating an obstruction of justice enhancement; (3) the Court adequately considered the § 3553 factors and all mitigating circumstances in determining a reasonable sentence; and (4) he

had no basis to argue that Perez was denied effective assistance of counsel.

The Government agreed with appellate counsel and moved for summary affirmance, representing that there were no non-frivolous issues. On August 8, 2007, the Court of Appeals found as such and granted summary affirmance. United States v. Efrain Rivera & Jose Perez, No. 06-5802-cr (2d Cir. Aug. 8, 2007).

## II. DISCUSSION

Petitioner now moves to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming that (1) trial counsel failed to ensure that the Petitioner understood the terms of the plea agreement, and (2) appellate counsel failed to argue that Petitioner's sentence was unreasonable pursuant to 18 U.S.C. § 3553 and that Petitioner was improperly issued an obstruction of justice enhancement.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part inquiry set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best

criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689).

Second, petitioner must "affirmatively prove prejudice," demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "[E]ven professionally unreasonable errors by defense counsel will not warrant setting aside the judgment in a criminal proceeding unless those errors were prejudicial." Urena v. United States, No. 06 Civ. 6050, 2007 WL 2319136, at *3 (S.D.N.Y. Aug. 8, 2007).

### A. Trial Counsel

A guilty plea is valid if it is a knowing and voluntary act "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). A plea is "knowing" if the defendant is fully aware of and appreciates its potential consequences. See United States v. Ready, 82 F.3d 551, 557 (2d Cir. 1996). It follows, therefore, that ineffective assistance of counsel can invalidate a guilty plea "to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." U.S. v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005). Where "defendant's specific claim is that counsel has misled him as to the possible sentence which

might result from a plea of guilty . . . the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any different in his decision to enter a plea." Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).

Petitioner claims he received ineffective assistance of counsel in that trial counsel failed to explain to him (1) that the Government could seek the denial of the acceptance of responsibility reduction and the imposition of an obstruction of justice enhancement, and (2) that statements he made at the Fatico hearing could negatively affect his sentence. He maintains that he would not have pleaded guilty had he known that the stipulated sentencing range was not binding.

The sworn statements Petitioner made at the time he entered his guilty plea belie his present claim. First, Petitioner stated that the plea agreement was translated for his review, explained to him by his attorney, and that he fully understood its terms. The plea agreement provides that the reduction for acceptance of responsibility was not definite, but would be granted so long as Perez clearly demonstrated acceptance of responsibility to the satisfaction of the Government in his plea allocution and subsequent conduct prior to sentencing. The plea agreement expressly reserved the Government's right to seek denial of the three-level downward adjustment for acceptance of

responsibility and the imposition of a two-level upward adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. The Court also repeatedly admonished Perez — and he confirmed that he understood — that the sentencing range set forth in the plea agreement was not binding on the Court and that the Court alone would determine his sentence.

The Government and the Court also apprised Perez several times of the potential ramifications of providing false testimony. The Court explained to him at the Rule 11 hearing on December 1, 2005, for example: "I have placed you under oath because I want you to tell the truth. Now, you're charged with a serious crime, as you know, but you could get yourself in more trouble if you were to lie to me because you are under oath." (Plea. Tr., Gov't Ex. B, at 3.) The Government reminded Perez at the Fatico hearing of how the Court warned him that he could be prosecuted further if he lied under oath. Each time, Perez said that he understood.

Furthermore, Petitioner confirmed that he was pleading guilty of his own free will, because, in fact, he was guilty.

"These statements create a presumption that his plea was knowing and voluntary, a presumption that is not overcome by vague and unsupported assertions that his attorneys failed to properly advise him." United State v. Tremblay, No. 08 Civ. 7030, 2009 WL 1055007, at *7 (S.D.N.Y. Apr. 20, 2009). The

petition is thus rejected. See United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (holding that a "district court is entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney . . . and had been made no promises except those contained in the plea agreement"); United States v. Soler, 124 F. App'x 62, 64 (2d Cir. 2005) (rejecting defendant's ineffective assistance claim that he was unaware of sentencing consequences of his plea where, during the plea colloquy, defendant stated that he understood the consequences); see also Blackledge v. Allison, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

For the reasons set forth above, Petitioner cannot establish that he was denied effective assistance of trial counsel.

### B. Appellate Counsel

Although the United States Supreme Court originated the two-part test in Strickland to evaluate the effectiveness of trial counsel, it is equally applicable to a claim of

ineffectiveness of appellate counsel. See, e.g., Smith v. Robbins, 528 U.S. 259, 285 (2000); McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

The duty of appellate counsel is to "support his client's appeal to the best of his ability." Anders, 386 U.S. at 744. If, however, after a "conscientious examination" of the record counsel believes the appeal is "wholly frivolous," he may request permission to withdraw as counsel and submit a brief "referring to anything that might arguably support the appeal." Id. "[T]he [Court of Appeals] — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. . . . [I]f it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." Id.

Petitioner alleges that his appellate counsel erred by failing to challenge Petitioner's sentence on the grounds that (1) the sentence was unreasonable pursuant to 18 U.S.C. § 3553 and (2) the obstruction of justice enhancement was improperly imposed. Petitioner's argument is without merit because appellate counsel properly followed the procedure set forth in Anders for fulfilling his duty of representation by seeking withdrawal and submitting a brief which details arguable issues

for appeal. Appellate counsel's <u>Anders</u> brief thoroughly informed the Court of the history of Petitioner's case and carefully considered arguable issues for appeal.

Even if appellate counsel had raised Petitioner's arguments on appeal, the record conclusively shows that his claims are without merit and would not succeed, and thus Petitioner cannot establish prejudice.

First, there is ample support for the Court's determination that Petitioner's conduct warranted a two-point enhancement for obstruction of justice. The Court did not merely make conclusory assertions as to Petitioner's credibility, but rather specified the testimony on which it based its decision to impose an obstruction of justice enhancement. Moreover, at sentencing, after the Court imposed the two-level enhancement for obstruction of justice, when permitted to address the Court, Petitioner essentially admitted that he provided false testimony intentionally, rather than as a result of confusion:

> I was remorseful about the mistake that I had made. And I was aware that I should not hide information from the government about my role in the offense that was committed. I am truly deeply remorseful, your Honor. If I had known – if I had been completely sure and aware from the start, I would have spoken to the Government. I wouldn't have had any problem with that. I did it out of stupidity and ignorance, and I recognize that, your Honor. That is why I now apologize and I implore . . . that you please not take away the 3 points for acceptance of responsibility . . . because that would be a very destructive sentence for me, your Honor.

(Sent. Tr., Gov't Ex. E, at 20:7-21.)

Second, Petitioner fails to articulate why his sentence is unreasonable under the factors set forth in § 3553. Petitioner claims that several mitigating factors were presented by trial counsel that would warrant a sentence below the guideline range, but it was based on the explicit consideration of those factors and other mitigating circumstances that the Court imposed a term of imprisonment that was 15 months below the guideline range.[1]

Most damaging to Petitioner's claim of prejudice, though, is that by granting summary affirmance, the Court of Appeals clearly agreed with counsel's conclusion that issues for appeal currently raised by Petitioner lack merit. Even if counsel made these arguments on appeal, they would have been rejected.

In sum, Petitioner cannot establish either prong of the <u>Strickland</u> analysis with regard to the effectiveness of his appellate counsel.

### III.  CONCLUSION

For the reasons set forth above, Perez's § 2255 petition is denied. No hearing is necessary because the habeas record conclusively establishes that he is entitled to no relief. 28

---

[1] Although a Guidelines sentence is not presumptively reasonable, the Court of Appeals has recognized that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." <u>United States v. Fernandez</u>, 443 F.3d 19, 27 (2d Cir. 2006).

U.S.C. § 2255; see also Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001). In addition, Petitioner has not made a "substantial showing" of the denial of a constitutional right, and therefore the Court will not grant a certificate of appealability. Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4). Petitioner has the right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See 28 U.S.C. § 2255; Miller-El v. Cockrell, 537 U.S. 322 (2003).

SO ORDERED.

Dated:    New York, New York
          January 5, 2010

                                    /s/ John F. Keenan
                                    JOHN F. KEENAN
                                    United States District Judge